# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | | |
|---|---|---|
| AMERICA'S COLLECTIBLES NETWORK, INC., d/b/a JEWELRY TELEVISION, and BBJ BANGKOK, LTD., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 3:10-CV-86 (Phillips) |
| TIMLLY (HK), TIMLLY BBK CO., LTD., SUNIL RATWANI, and SANJAY PUNJABI, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the Plaintiffs' Motion to Remand [Doc. 2]. On December 22, 2009, Plaintiffs filed suit in the Chancery Court of Knox County, Tennessee. [Notice of Removal, Doc. 1 at 1]. Pursuant to 28 U.S.C. §§ 1441 and 1446, this case was removed to federal court on March 8, 2010. [Id.]. On March 9, 2010, Plaintiffs filed a Motion to Remand [Doc. 2].

Removal was premised upon diversity jurisdiction, 28 U.S.C. § 1332, or alternatively, federal question jurisdiction, 28 U.S.C. § 1331. [Sanjay Punjabi's Notice of Removal, Doc. 1 and Response to Plaintiffs' Motion to Remand, Doc. 4]. Plaintiffs argue that the Court lacks both diversity and federal question jurisdiction. [Plaintiffs' Motion to Remand, Doc. 2]. For the following reasons, Plaintiffs' Motion to Remand [Doc. 2] is **GRANTED**, whereby this case is **REMANDED** to state court for lack of subject matter jurisdiction.

I.   ANALYSIS

   A.   The Court Does Not Have Diversity Jurisdiction Under 28 U.S.C. § 1332

1

The diversity statute, 28 U.S.C. § 1332, provides that district courts have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and involves "(1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state; [or] (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties . . ." 28 U.S.C. § 1332(a). In U.S. Motors v. Gen. Motors Europe, the Court of Appeals for the Sixth Circuit held that district courts lack diversity jurisdiction "on either § 1332(a)(1) or (a)(3) [when] U.S. citizens are not on both sides of the controversy." 551 F.3d 420, 422 (6th Cir. 2008), *cert. denied*, 130 S.Ct. 1524 (2010).

Plaintiff America's Collectibles Networks, Inc. ("ACN") is a Tennessee corporation, with its principal place of business in Tennessee. [Plaintiffs' Complaint, Doc. 1-2 at 1]. Plaintiff BBJ Bangkok, Limited ("BBJ") is a Thai corporation, and is a wholly owned subsidiary of ACN. [Id. at 2]. BBJ has a business address in Bangkok, Thailand. [Id.].

Defendant Timlly (HK) is a Hong Kong corporation, with its principal place of business in Hong Kong. [Id.]. Defendant Timlly BBK Company, Limited ("Timlly BBK") is a Thai corporation, with its principal place of business in Thailand. Defendants Sunil Ratwani and Mr. Punjabi, owners of Timlly (HK) and Timlly BBK, are citizens of Hong Kong.

Based upon U.S. Motors, the Court lacks subject matter jurisdiction under 28 U.S.C. § 1331(a)(1) and (a)(3) because U.S. citizens are not on both sides of the controversy. *See* U.S. Motors, 551 F.3d at 422. None of the Defendants are U.S. citizens for purposes of the diversity statute.

The Court also lacks subject matter jurisdiction under 28 U.S.C.§ 1332(a)(2). In U.S. Motors, the Court of Appeals held that § 1332(a)(2) did not apply because the suit involved "a

2

combination of domestic and foreign plaintiffs and a foreign defendant." Id. In particular, the court held that "the *presence of foreign parties on both sides of the dispute* destroys the complete diversity required by § 1332(a)(2)." Id. at 424 (emphasis added). In the present case, plaintiff BBJ is a Thai corporation, and thus a "foreign" party for purposes of the diversity statute. In addition, each Defendant is a "foreign" party for purposes of the diversity statute. Because there are "foreign parties on both sides of the dispute," the Court lacks subject matter jurisdiction under 28 U.S.C. § 1331(a)(2). Id.

      **B.    Defendants Failed to Show that BBJ Was Fraudulently Joined to Defeat Diversity Jurisdiction**

In his Response to the Motion to Remand, Sanjay Punjabi ("Mr. Punjabi") argues that "[t]he Plaintiffs have unnecessarily and inappropriately included BBJ as a party to this action not to maintain diversity jurisdiction . . . but for the sole purpose of destroying diversity jurisdiction so as to otherwise obstruct the Defendant's right to remove based on 28 U.S.C. § 1332(2)." [Mr. Punjabi's Response to Plaintiffs' Motion to Remand, Doc. 4 at 3]. As the Court of Appeals for the Sixth Circuit has stated, "it is the removing party's burden to demonstrate fraudulent joinder, and any doubts are resolved against removal." Probus v. Charter Commc'ns., LLC, 234 F. App'x 404, 406 (6th Cir. 2007) (citing Alexander v. Elec. Data Sys. Corp., 13 F.3d 940, 948-49 (6th Cir. 1994)). To determine whether a party has been fraudulently joined to defeat diversity jurisdiction, courts apply the following test:

> There can be no fraudulent joinder unless it be clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law. . . . One or the other at least would be required before it could be said that there was no real intention to get a joint judgment, *and that there was no colorable ground for so claiming*.

3

Alexander, 13 F.3d at 949 (emphasis added) (quoting Bobby Jones Garden Apartments, Inc. v. Suleski, 391 F.2d 172, 176 (5th Cir. 1968)). In other words, "the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." Alexander, 13 F.3d at 949 (quoting Bobby Jones Garden Apartments, 391 F.2d at 176). *See also* Probus, 234 F. App'x at 406 ("In order to determine whether a non-diverse defendant was fraudulently joined, we ask whether the plaintiff had a colorable basis for her claims against that defendant.").

In the complaint, Plaintiffs allege that they purchased $9,119,496.42 in gemstones from Timlly (HK) and/or Timlly BBK between 2005-2008. [Plaintiffs' Complaint, Doc. 1-2]. As a basis for this lawsuit, Plaintiffs allege that Defendants made misrepresentations in connection with the gemstone sales. [Id.]. In particular, Plaintiffs allege that "all these gemstones were purchased by ACN (Jewelry Television) and sold to either ACN or its wholly owned subsidiary, BBJ, for delivery to Knoxville, Tennessee, and for the purpose of allowing ACN to market the A-L products (gemstones) through its television home shopping network and the Internet from its headquarters located in Knoxville, Tennessee, to its customers." [Id. at 3]. As Mr. Punjabi writes, "Plaintiff's claim to have purchase a total of $9,119,496.42 in gemstones from Timlly (HK) and/or Timlly BKK [sic] during the period 2005-2008 in a total of 112 transactions. However, only 6 (less than 5.36%) of these transactions allegedly involved BBK." [Mr. Punjabi's Response to Plaintiffs' Motion to Remand, Doc. 4 at 4.]. Plaintiffs have filed claims of breach of warranty, fraud/intentional misrepresentation, and negligent misrepresentation– all relating to the gemstone transactions. While ACN may have purchased the gemstones, it allegedly sold some of the gemstones to BBJ, its wholly-owned subsidiary. BBJ's alleged involvement in the gemstone transactions undercuts Mr.

4

Punjabi's argument that BBJ was fraudulently joined.

As the removing party, it was Mr. Punjabi's burden to demonstrate that BBJ was fraudulently joined to defeat diversity jurisdiction. *See* Saltire Indus., Inc. v. Waller, Lansden, Dortch & Davis, PLLC, 491 F.3d 522, 530 (6th Cir. 2007) ("Saltire had no way of proving that the IDB was fraudulently joined to defeat diversity because it would have had to show that the facts pled by the Norman plaintiffs could not have legally created liability on the part of the IDB."). Notably, Mr. Punjabi failed to show that BBJ lacked a colorable claim against the Defendants. *See* Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C., 176 F.3d 904, 907 (6th Cir. 1999) (holding that the "burden of proving fraudulent joinder" is on the alleging party and that the "motive in joining [the nondiverse party] is immaterial to our determination regarding fraudulent joinder"). Accordingly, the Court finds that the Defendants failed to show that BBJ was fraudulently joined to defeat diversity jurisdiction. Accordingly, the Court reaffirms its previous ruling that it lacks diversity jurisdiction under 28 U.S.C. § 1332.

### C. The Court Does Not Have Federal Question Jurisdiction Under 28 U.S.C. § 1331

While Mr. Punjabi's Notice of Removal [Doc. 1] was based upon diversity jurisdiction, his later response to the Motion to Remand was based upon federal question jurisdiction under 28 U.S.C. § 1331. [Mr. Punjabi's Response to Plaintiffs' Motion to Remand, Doc. 4]. Under 28 U.S.C. § 1331, federal district courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or *treaties of the United States*." 28 U.S.C. § 1331 (emphasis added). As a basis for jurisdiction, Mr. Punjabi argues that Plaintiffs' claims are governed by the United Nations Convention on Contracts for the International Sale of Goods ("CISG"), a treaty ratified by the

5

United States.[1]  Apr. 11, 1980, S. Treaty Doc. No. 98-9 (1983), 19 I.L.M. 671 (1980).

The CISG, which is a multilateral treaty, "sets out substantive provisions of law to govern the formation of international sales contracts and the rights and obligations of the buyer and seller." Electrocraft Ark., Inc. v. Super Elec. Motors, Ltd., No. 4:09cv00318 SWW, 2009 WL 5181854, at *3 (E.D. Ark. Dec. 23, 2009) (citing Caterpillar, Inc. v. Usinor Industeel, 393 F. Supp. 2d 659, 673 (N.D. Ill. 2005) (citation omitted)).  The goal is to "promote worldwide uniformity in dealing with sales disputes arising from international sales." Electrocraft, 2009 WL 5181854, at *3 (citation omitted).  The CISG applies to "international sales contracts between parties that are located in signatory countries, and who have not opted out of CISG coverage at the time of contracting." Id. (citation omitted).  As Article I states, the treaty "applies to contracts of sale of goods between parties whose places of business are in different States . . . *when the States are Contracting States*." CISG, 19 I.L.M. 671 (1980), art. I(1)(a) (emphasis added).  *See, e.g.*, Zapata Hermanos Sucesores, S.A. v. Hearthside Banking Co., 313 F.3d 385, 387 (7th Cir. 2002) (holding that the CISG applied because Mexico and the U.S. are signatory countries, and because a Mexican corporation sued a U.S. corporation for breach of contract relating to the sale of goods).  The threshold question, then, is whether the corporate parties in this lawsuit are located in Contracting States under the CISG.

As explained earlier, plaintiff ACN is a U.S. corporation with its principal place of business in the U.S.  Plaintiff BBJ is a Thai corporation, and has a business address in Thailand.  Defendant Timlly (HK) is a Hong Kong corporation, and has its principal office in Hong Kong.  Defendant

---

[1] The United States Senate ratified the CISG on December 11, 1986, and it became effective on January 1, 1988.  *See* Forestal Guarani S.A. v. Daros Int'l, Inc., 613 F.3d 395, 397 (3d Cir. 2010) (citing John O. Hannold, UNIFORM LAW FOR INTERNATIONAL SALES UNDER THE 1980 UNITED NATIONS CONVENTION 693-94 (2d ed. 1991)).

BBK is a Thai corporation, and has its principal office in Thailand. To determine whether the CISG applies, the Court must decide whether Thailand and Hong Kong are Contracting States.

As an initial matter, the Court recognizes that both the U.S. and the People's Republic of China ("China") are Contracting States under the CISG.[2] Thailand, however, is not a Contracting State. *See* CISG: TABLE OF CONTRACTING STATES, http://www.cisg.law.pace.edu/cisg/countries/cntries.html (last visited Oct. 19, 2010). While Mr. Punjabi cedes that Thailand is not a Contracting State, he argues that Hong Kong–which Timlly (HK) is incorporated under–is a Contracting State. [Mr. Punjabi's Response to Plaintiffs' Motion to Remand, Doc. 4 at 6]. As Mr. Punjabi writes, "[t]he gravamen of the Plaintiffs' complaint is a contract and/or series of purchase transactions between parties from two different contracting states and countries (the United States and China/Hong Kong). To the extent representations were made concerning the gemstones, they 'emanated' from the Defendants in Hong Kong to the Plaintiffs in the United States." [Id.]. Accordingly, the Court must decide whether Hong Kong is a Contracting State under the CISG.

Another federal court, in a well-reasoned opinion, held that Hong Kong is not a Contracting State under the CISG. Innotex Precision Ltd. v. Horei Image Prods., Inc., 679 F. Supp. 2d 1356 (N.D. Ga. 2009). In Innotex, a Hong Kong corporation (seller of printer cartridges) filed suit against two U.S. corporations (buyers of the cartridges). Id. Like the present case, the plaintiff sued the defendants s under theories of breach of contract and breach of warranty. Id. at 1357. As an initial matter, the Court had to decide whether Hong Kong was a Contracting State under the CISG. Id. at 1359. The court held that Hong Kong was not a Contracting State based upon the following

---

[2] *See*, e.g., Electrocraft, 2009 WL 5181854, at *4 (stating that China ratified the CISG in 1986).

reasons:

> Until 1997, Hong Kong was a British Crown Colony. In 1997, it became a Special Administrative Region of the People's Republic of China, which is a signatory to the CISG. Article 93(1) of the CISG allows a Contracting State consisting of more than one territorial unit to 'declare that this Convention is to extend to all its territorial units or only to one of more of them.' CISG, art. 93(1). To be valid, an Article 93 declaration must be made in writing and deposited with the Secretary General of the United Nations. Id. arts. 97(2), 93(2). Under Article 93(4), if a Contracting State makes no such declaration, 'the Convention is to extend to all territorial units of that State.' Id. art. 93(4).
>
> The People's Republic of China has not formally declared under Article 93 that the CISG does not apply to Hong Kong. However, in 1997 the Chinese government deposited with the Secretary General of the United Nations a written declaration announcing the conventions to which China was a party that should apply to Hong Kong upon its transfer. The CISG was not included among the 127 listed treaties, *indicating that the Chinese government did not intend to extend the CISG to Hong Kong*. (citations omitted) (emphasis added).
>
> This interpretation is consistent with the position held by the Hong Kong Department of Justice, foreign case law, and the majority of relevant scholarship. The International Law Division of the Hong Kong Department of Justice publishes an online list of treaties that are currently in force and applicable to Hong Kong. (citation omitted). The CISG is not included on the list. (citation omitted).
>
> Moreover, while no American court has addressed whether Hong Kong is a Contracting State, the Supreme Court of France, the only foreign country directly to address the issue, held that the 1997 declaration satisfied Article 93. . . . (citations omitted).
>
> Additionally, the majority of relevant scholarship, including an article published in the Hong Kong Law Journal and an article authored by the Dean of Wuhan University Law School, concludes that Hong Kong is not a Contracting State based on the 1997 Declaration.

> (citation omitted). Accordingly, consistent with the position held by the Chinese government, the Hong Kong Department of Justice, the Supreme Court of France, and numerous commentators, the Court finds that the CISG does not apply here because Hong Kong is not a Contracting State. (citations omitted).

Id. at 1358-59. The Court finds the reasoning of Innotex persuasive. In particular, the Court finds the 1997 Declaration–which did not mention the CISG–especially significant.

Only two other federal courts have addressed this issue. In Electrocraft, a district court reached the opposite conclusion: it found that Hong Kong was a Contracting State under the CISG. 2009 WL 5181854, at *4. The Electrocraft court relied upon an unpublished decision in CNA Int'l v. Guangdon Kelon Elec. Holdings, No. 05C5734 (N.D. Ill. Sept. 3, 2008) (holding that Hong Kong is a Contracting State under the CISG). Having reviewed Electrocraft and CNA Int'l, the Court finds Innotex far more persuasive. Based upon the 1997 Declaration, foreign case law, the Hong Kong Department of Justice's interpretation, and relevant scholarship, the Court finds that Hong Kong is not a Contracting State under the CISG.

Having decided that Thailand and Hong Kong are not Contracting States under the CISG, that treaty does not apply to the present case. Because federal question jurisdiction was premised upon the CISG, and because that treaty is inapplicable, the Court does not have jurisdiction under 28 U.S.C. § 1331.

## II. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Remand [Doc. 2] is **GRANTED**. Having determined that the Court lacks subject matter jurisdiction under both the diversity statute, 28 U.S.C. § 1332, and the federal question statute, 28 U.S.C. § 1331, this case is **REMANDED** to state court for lack of subject matter jurisdiction.

**IT IS SO ORDERED**.

**ENTER:**

                           s/ Thomas W. Phillips
                          United States District Judge